(No. 61227.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. THOMAS RAY JAMES, Appellant.

*Opinion filed February 21, 1986.*

GOLDENHERSH and SIMON, JJ., dissenting.

Gaye Bergschneider, Assistant Public Defender, of Danville, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Roma J. Stewart, Solicitor General, and Mark L. Rotert and James E. Fitzgerald, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE MILLER delivered the opinion of the court:

In separate jury trials, defendant Thomas James was found guilty of murder and attempted murder. The appellate court affirmed the murder conviction (82 Ill. App. 3d 551), and in a Rule 23 order (87 Ill. 2d R. 23) filed the same day, affirmed the conviction for attempted murder (81 Ill. App. 3d 1202). Defendant petitioned the United States Supreme Court for a writ of *certiorari* as

to the murder conviction, alleging that police inquiries leading to his inculpatory statements had violated his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602. The Supreme Court accepted defendant's petition, vacated the judgment, and remanded the case for reconsideration in light of *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880. On remand, the appellate court reversed defendant's murder conviction and remanded the case for a new trial. 100 Ill. App. 3d 986.

Contending that the inculpatory statements used against him at his trial for attempted murder were similarly obtained in violation of his constitutional rights under *Miranda*, defendant filed in the circuit court of Vermilion County a petition for relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, pars. 122—1 through 122—7). James also alleged in the petition that his appellate counsel was incompetent for failing to seek further review of James' conviction for attempted murder. The circuit court denied the defendant's petition for post-conviction relief without an evidentiary hearing. In a Rule 23 order (87 Ill. 2d R. 23), the appellate court found *Edwards* inapplicable to the attempted-murder case, found no ineffective assistance of counsel, and affirmed the denial of relief. (127 Ill. App. 3d 1172.) We accepted defendant's petition for leave to appeal (94 Ill. 2d R. 315(a)) and affirm.

Defendant was arrested on May 17, 1978, and charged with the murder of David Holler and the attempted murder of Samuel Cartwright. While being transported to the police station, defendant was read his rights under *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and said that he would like to talk to an attorney. At the station, the police again read defendant his *Miranda* rights. Although James' earlier request for an attorney had not been met,

the police began to question him. The police halted the interrogation on a number of occasions; following many of these breaks, the police readvised defendant of his rights before resuming questioning. After making the initial request for counsel while being taken to the police station, however, James made no further mention of a desire to speak with an attorney. Subsequently, the defendant made incriminating statements to the police and to others about his participation in both the murder and the attempted murder.

In a hearing on defendant's motion to suppress his incriminating statements, the trial court found that the defendant had not clearly expressed a desire for an attorney, but had only inquired about counsel. Finding that James' statements had been made freely and voluntarily, the court ruled that defendant's post-detention statements would be admissible as evidence at trial.

Following a trial at which James' inculpatory statements were introduced into evidence, a jury found the defendant guilty of the attempted murder of Samuel Cartwright. The court sentenced James to 30 years' imprisonment. In a separate trial at which James' statements were also admitted, a jury found James guilty of the murder of David Holler, for which he was sentenced to a 40-year prison term. Both convictions were affirmed on appeal. 82 Ill. App. 3d 551 (murder); 81 Ill. App. 3d 1202 (Rule 23 order) (attempted murder).

Defendant's appellate counsel elected to challenge defendant's murder conviction by petitioning the United States Supreme Court for a writ of *certiorari*. Counsel maintained that James' inculpatory statements were improperly admitted at defendant's murder trial.

In a memorandum opinion filed May 26, 1981, the Supreme Court granted defendant's petition for writ of *certiorari* and vacated the judgment in the murder case. (451 U.S. 1014, 69 L. Ed. 2d 386, 101 S. Ct. 3001.) The

court remanded the case to the Appellate Court of Illinois, Fourth District, for reconsideration in light of the Supreme Court's decision announced eight days earlier in *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880. On remand, the appellate court ruled that *Edwards* precluded the State from introducing the defendant's post-arrest statements into evidence, reversed James' murder conviction, and remanded the case for a new trial. (100 Ill. App. 3d 986.) Nothing in the record, however, indicates why appellate counsel contested only the inculpatory statements used in defendant's murder trial; a finding that defendant had been deprived of his constitutional rights in that case would have rendered James' inculpatory statements similarly inadmissible in his trial for attempted murder.

Following the reversal of his murder conviction, the defendant filed a post-conviction petition for relief in his attempted-murder case under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1981, ch. 38, pars. 122—1 through 122—7). In his petition, James alleged that his rights under *Edwards* were violated by the State's use of his inculpatory statements at his trial for attempted murder, in the same way his rights had been violated by the use of his statements in the murder trial. James also argued that his appellate counsel's failure to seek discretionary review of his attempted-murder conviction in this court or the United States Supreme Court denied James the effective assistance of counsel.

The trial court denied defendant's request for an evidentiary hearing on his claims. The appellate court affirmed the denial, finding that *Edwards* was not applicable retroactively in a collateral attack on a conviction under the Supreme Court's recent decision in *Solem v. Stumes* (1984), 465 U.S. 638, 79 L. Ed. 2d 579, 104 S. Ct. 1338. The appellate court also found that the defendant was not denied the effective assistance of counsel.

We allowed defendant's petition for leave to appeal under Rule 315(a) (94 Ill. 2d R. 315(a)).

In *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, the Supreme Court held that the use of a criminal defendant's confession, obtained by custodial interrogation, violates the defendant's fifth and fourteenth amendment rights if the accused's previous request for counsel was not observed. The court stated that after an accused invokes his right to counsel, the accused may not be further interrogated until counsel has been made available to him, unless the accused himself initiates further communication with the police.

Following its decision in *Edwards*, the Supreme Court remanded several cases, including the present defendant's murder conviction, for reconsideration in light of *Edwards*. (See *Shea v. Louisiana* (1985), 470 U.S. 51, 55 n.3, 84 L. Ed. 2d 38, 44 n.3, 105 S. Ct. 1065, 1068 n.3.) The court did not, however, expressly determine whether *Edwards* was applicable retroactively until its decision in *Solem v. Stumes* (1984), 465 U.S. 638, 79 L. Ed. 2d 579, 104 S. Ct. 1338. In *Solem*, the court held that *Edwards* did not apply retroactively in a *habeas corpus* proceeding in the Federal courts where the petitioner's conviction had been affirmed by the South Dakota Supreme Court before *Edwards* was decided. The court explained that the *Edwards* rule bears only a tangential relation to truthfinding at trial, and therefore should not be given retroactive effect, under the principles established in *Linkletter v. Walker* (1965), 381 U.S. 618, 14 L. Ed. 2d 601, 85 S. Ct. 1731. The court stated in *Solem*, "At a minimum, nonretroactivity means that a decision is not to be applied in collateral review of final convictions. For purposes of this case, that is all we need decide about *Edwards*." 465 U.S. 638, 650, 79 L. Ed. 2d 579, 592, 104 S. Ct. 1338, 1345.

In *Shea v. Louisiana* (1985), 470 U.S. 51, 84 L. Ed. 2d 38, 105 S. Ct. 1065, the Supreme Court held that its ruling in *Edwards* does apply to cases which were pending on direct appeal in a State court at the time *Edwards* was decided. The court distinguished cases on direct review from cases under collateral attack by noting the considerations of finality implicit in the judicial process. The court recognized that while a defendant seeking collateral review has already taken his case through the primary judicial proceedings, a defendant on direct review has not completed this process. For persons on direct appeal, "the curtain of finality has not been drawn." 470 U.S. 51, 60, 84 L. Ed. 2d 38, 47, 105 S. Ct. 1065, 1070.

In the present case, more than 14 months elapsed between March 1980, when the appellate court affirmed defendant's convictions on direct appeal, and the announcement of *Edwards* in May 1981. The defendant's option to petition this court for leave to appeal his conviction for attempted murder had expired long before the decision in *Edwards* was handed down. (94 Ill. 2d R. 315(b).) Because defendant had completed the State appellate process and had not petitioned the United States Supreme Court for a writ of *certiorari* on his attempted-murder conviction, that conviction had become final before he instituted the present post-conviction proceeding. Under *Shea v. Louisiana*, the holding of *Edwards* does not apply to the instant case.

Defendant brings the present action on a petition for post-conviction relief. A proceeding under the Post-Conviction Hearing Act is not an appeal (*People v. Vail* (1970), 46 Ill. 2d 589) but is a collateral attack on a judgment. (See *People v. Jennings* (1952), 411 Ill. 21.) In light of *Solem v. Stumes,* therefore, we hold that defendant has failed to sufficiently allege a violation of constitutional rights under *Edwards* which would entitle him

to post-conviction relief.

Defendant also contends that he was denied his constitutional right to effective assistance of counsel. He submits that his appellate counsel was incompetent for failing to petition either this court or the United States Supreme Court for review of his conviction for attempted murder.

In *Wainwright v. Torna* (1982), 455 U.S. 586, 71 L. Ed. 2d 475, 102 S. Ct. 1300, the Supreme Court held that counsel's failure to timely file for discretionary review in a State's highest court did not deprive the defendant of effective assistance of counsel. The court noted its decision in *Ross v. Moffitt* (1974), 417 U.S. 600, 41 L. Ed. 2d 341, 94 S. Ct. 2437, where it had held that a criminal defendant had no constitutional right to the assistance of counsel in either discretionary State appeals or applications to the Supreme Court for review. Because the defendant had no right to counsel, the court reasoned in *Wainwright*, the defendant could not be deprived of the effective assistance of counsel by his attorney's failure to file an application for discretionary review. (455 U.S. 586, 587-88, 71 L. Ed. 2d 475, 477-78, 102 S. Ct. 1300, 1301.) As the Supreme Court recently explained in *Evitts v. Lucey* (1985), 469 U.S. 387, 397 n.7, 83 L. Ed. 2d 821, 830 n.7, 105 S. Ct. 830, 836 n.7, "Of course, the right to effective assistance of counsel is dependent on the right to counsel itself." For purposes of this case, we see no reason to deviate from the Supreme Court's rationale in *Wainwright*. We find, therefore, that defendant was not deprived of his constitutional right to the effective assistance of counsel when his appellate counsel failed to seek discretionary review of James' attempted murder conviction. Accord, *Bullock v. Warden* (S.D.N.Y. 1983), 575 F. Supp. 681.

A post-conviction petitioner is not entitled to an evidentiary hearing as a matter of right. (*People v. Gaines*

(1984), 105 Ill. 2d 79.) Rather, the Post-Conviction Hearing Act permits summary dismissal of nonmeritorious petitions without an evidentiary hearing. (*People v. Derengowski* (1970), 44 Ill. 2d 476.) Because the defendant has failed to present any legitimate claim of a violation of his constitutional rights, we hold that his petition for post-conviction relief was properly dismissed.

Accordingly, the judgment of the appellate court is affirmed.

*Judgment affirmed.*

JUSTICE GOLDENHERSH, dissenting:

I dissent. The parties agree that under *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880, the statement upon which defendant's conviction rests was obtained in violation of his constitutional rights. The majority rests its affirmance of the judgment of the appellate court on *Solem v. Stumes* (1984), 465 U.S. 638, 79 L. Ed. 2d 579, 104 S. Ct. 1338, in which the Supreme Court held that *Edwards* did not apply to a *habeas corpus* proceeding collaterally attacking a State judgment.

The *sine qua non* of a principle enunciated in a judicial opinion which would limit the retroactive application is that it be new and a departure from an established rule. In his dissent in *Solem v. Stumes*, Justice Stevens demonstrated that the holding in *Edwards* is not a new constitutional rule. Assuming, *arguendo*, that *Edwards* announced a rule new to the Federal judiciary, the rule of *Edwards* is not new in Illinois.

In this case defendant was taken into custody at approximately 5 p.m. and approximately an hour thereafter was advised of his rights. He was questioned several times during that evening and was finally placed in a cell shortly before midnight. Sometime during this period of interrogation he asked to use the telephone and to speak

to an attorney. The officers talked with him again at 11 a.m. the following day and asked him if he wanted to talk. He was interrogated several times during the course of the day, and the statement in question was taken at approximately 9 p.m. that evening.

On at least two occasions, this court has applied the allegedly "new" rule of *Edwards*. In *People v. Henenberg* (1973), 55 Ill. 2d 5, this court held that a statement obtained in the course of interrogation subsequent to the defendant's request to see a lawyer should have been suppressed. In *People v. Washington* (1977), 68 Ill. 2d 186, it was held that a statement made during interrogation which continued after defendant's request for counsel must be suppressed. I submit that in *Edwards* the Supreme Court adopted the interpretation of *Miranda* found in *Henenberg* and *Washington* which has prevailed in this jurisdiction since 1973.

Assuming, *arguendo*, that the rule is new, fundamental justice proscribes holding that the same statement, admittedly taken under circumstances which this court in 1973 held to be in violation of defendant's constitutional rights, serves to sustain the conviction in the one case, but not in the other. The defendant's constitutional rights were just as effectively violated in the conviction which was involved in the post-conviction proceeding as in the one on direct appeal. The fortuitous circumstance that his direct appeal has been concluded should not deprive him of his constitutional rights.

In his dissent in *Solem v. Stumes* (1984), 465 U.S. 638, 79 L. Ed. 2d 579, 104 S. Ct. 1338, Justice Stevens stated far more eloquently than can I the reason why this judgment is wrong and should be reversed. Justice Stevens said:

"The Court is understandably concerned about the conduct of private law breakers. That concern should not, however, divert its attention from the overriding impor-

tance of requiring strict obedience to the law by those officials who are entrusted with its enforcement—and indeed, with its interpretation. For decisions of this kind have a corrosive effect in a society dedicated to the rule of law. There is, after all, profound wisdom in Justice Brandeis' observation:

'Decency, security and liberty alike demand that government officials shall be subjected to the same rules of conduct that are commands to the citizen. In a government of laws, existence of the government will be imperilled if it fails to observe the law scrupulously. Our Government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. Crime is contagious. If the Government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy. To declare that in the administration of the criminal law the end justifies the means—to declare that the Government may commit crimes in order to secure the conviction of a private criminal—would bring terrible retribution. Against that pernicious doctrine this Court should resolutely set its face.' *Olmstead v. United States* [(1928), 277 U.S. 438, 485, 72 L. Ed. 944, 959-60, 48 S. Ct. 564, 575 (Brandeis, J., dissenting)].

I respectfully dissent." 465 U.S. 638, 667, 79 L. Ed. 2d 579, 603, 104 S. Ct. 1338, 1354.

JUSTICE SIMON joins in this dissent.

JUSTICE SIMON, also dissenting:

I join in Justice Goldenhersh's dissent and add the following observations.

In these unique circumstances, I cannot agree that different outcomes are justified by the distinction between direct and collateral review. Although finality in the criminal process is an important virtue, it should not be achieved at the cost of sacrificing fairness or common sense. The record does not reveal the reasons why *cer-*

*tiorari* was sought by the defendant in one case and not in the other. The defects, however, which rendered the statements inadmissible applied equally in both cases. To hold that a single set of facts on a single legal issue can result in a criminal conviction standing in one case and being reversed in another makes the law appear overly technical and may thus contribute to the mistrust and confusion with which many regard the legal process.

JUSTICE GOLDENHERSH joins in this dissent.