THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARINA BROWN, Defendant-Appellant.

First District (2nd Division)   No. 1—87—0569

Opinion filed June 6, 1989.—Rehearing denied July 11, 1989.

Michael J. Pelletier and Karen Daniel, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil Partee, State's Attorney, of Chicago (Inge Fryklund and Jane E. Loeb, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE BILANDIC delivered the opinion of the court:

Defendant, Marina Brown, was jointly indicted with codefendants Sherman Addison and Annie Robinson for murder, armed robbery, home invasion and residential burglary. Defendant Brown and Addison were tried together before the same jury. Robinson was tried simultaneously before a separate jury. Defendant Brown was found guilty of armed robbery, home invasion and residential burglary and not guilty of murder. She was sentenced to two concurrent extended-term sentences of 50 years. Addison and Robinson were found guilty of all offenses, including murder. Defendant Brown appeals her conviction and sentence.

The evidence presented at trial by the State against defendant Marina Brown was as follows.

On Valentine's Day, February 14, 1985, Della Hamilton and her grandson went to visit her best friend, 69-year-old Helen Smith, at Smith's home at 5235 W. Washington, Chicago, Illinois. Della helped Smith tidy up the house. Nyona Barton, Della's granddaughter, had

also been to Smith's home a few days earlier.

Nyona knew defendant Marina Brown for about four years. A few months prior to February 1985, defendant lived with Nyona and Della. During this time, defendant went with Della to Smith's home to help her do things around the house, including rearranging the bedroom and drawers.

During the six days following Valentine's Day, Della tried to reach Smith by telephone but without success. On February 20, 1989, Della and Nyona went to Smith's home, where they found her dead. The home was in shambles.

Detective Richard Schak arrived at Smith's home to investigate her death. His investigation revealed that there were no signs of forced entry. The detective also observed the condition of Smith's body. She was naked from the waist up. Her bra was pulled down around her waist. Her slip was soaked in body fluids and what appeared to be blood. An elastic bandage was used to bind her ankles. A scarf, coiled around her neck, bound her shoulders and continued under her armpits in a full Nelson pattern. The scarf was tied in a knot at the center of her back and then connected to a door knob with another knot. The detective also observed egg shells on the body. A can of red paint had been tipped onto the floor next to the body. A small hunting knife, with traces of blood on it, was found in the front porch area. Also, a 1½-foot-long plumbing pipe, with traces of blood and hair on it, was found about 12 feet from the body.

The medical examiner testified that the body was in a state of post-mortem decomposition. Cause of death was ligature strangulation and blunt head trauma. He also noted a stab wound on the left calf.

The investigation into Smith's death continued with no progress for one month. A significant development occurred when a Larry Minniefield was arrested for shoplifting in March of 1985. Minniefield had a record of prior convictions for robbery, armed robbery, and possession of marijuana. At this time, he told police that he could provide them with some information regarding a murder and that certain items of evidence could be found at his apartment.

At trial, Minniefield's testimony established that in February 1985, codefendant Annie Robinson was his girlfriend. Shortly after Valentine's Day, Robinson, Addison and defendant went to his apartment. Robinson introduced Addison as "Lewis" and defendant as "Sugar."

Robinson was wearing a radio headset, and defendant and Addison were each carrying a pillowcase filled with items. Robinson was covered with a red, dye-like substance, and Addison had some light

red substance on his boots. Robinson had teeth marks on her right hand. Minniefield accompanied Robinson into the bathroom, where she went to wash off the dye. In the other room, defendant and Addison were arguing over who would keep which items of property, which included an answering machine, a portable television, a tiny television, jewelry and a small caliber pistol.

Minniefield stated that the others were drinking liquor and defendant and Addison were saying that they had searched Smith's room but had not found the money. Robinson was trying to tell Minniefield what had happened but defendant told her to shut up. Everyone was taking off their clothes and sorting through the items, which included some credit cards, saying they had to burn everything. At that point, Minniefield went to sleep.

When he woke up the next morning, Robinson and Addison were in his apartment and defendant was coming in saying she had burned everything. The four of them then went to the Bryn Mawr Hotel, where they met a man named William Smith to whom they sold some of the items for $80.

William Smith testified that in February 1985, the defendants came to the Bryn Mawr Hotel, where he lived and worked as a security guard, with some merchandise. He arranged for two walkmans, a walkman television, a portable television and a pistol to be sold. His commission was $10.

On March 21, 1985, defendant was identified by Minniefield and arrested. Later that same day, Addison was brought into the police station. Defendant identified Addison as "Lewis." Addison was placed under arrest. At approximately 10:55 a.m., Addison gave a 15-page confession in the presence of two assistant State's Attorneys, a detective, and a court reporter. Sometime later, Brown gave a 15-page confession before the same persons.

Both confessions essentially stated that defendant, Addison and Robinson met in February 1985 in Addison's apartment to talk about going to get some money from an old woman on the West side. Defendant stated that she did not know the woman. Addison stated that it was defendant Brown who told them this woman kept money at her home. Addison also stated that defendant Brown gave Robinson a pistol. Defendant Brown, however, stated that Robinson took the pistol from her own pocket.

The three of them took the "el" to the West side. When they reached the home of Smith, Addison checked the mailbox. He stated that defendant told him to do this. Defendant stated that Robinson told him to check the mailbox because earlier in the day, there was a

package in it and they wanted to be sure that Smith had come home.

Robinson went up to the door and gained entrance. Addison and defendant followed. Inside, they saw Robinson on top of Smith trying to tie her up. Defendant Brown stated that Robinson was beating Smith in the face with her fists. Addison and defendant went straight to the bedroom to search for money. Defendant asked Addison to go check on Robinson and the victim. Addison stated that he saw Robinson slapping Smith. Smith was tied up and there was blood on her face. He went back to the bedroom and told defendant Brown that everything was "O.K." Defendant Brown could hear the woman grunting. They did not find any money but took some merchandise.

Defendant stated that Robinson came into the back room and said "Sugar, the lady is out cold. I tied her up the best way possible." Defendant then went to go look at the victim, whom she referred to as "Miss Helen." Defendant then described "Miss Helen's" condition:

"I seen egg shells, blood, paint. Her feet was bound. I think her hands were bound. I seen a blue scarf tied around her neck, from the neck to the doorknob."

Defendant said she then went back to Addison and Robinson. Defendant stated, "[W]e got a murder, you killed the lady." Defendant asked Robinson what she had done to the victim and Robinson answered "punched her in her eyes, her mouth, and her nose."

When they left the victim's home, they went to Minniefield's apartment. The account of the events that transpired hereafter essentially follows the testimony of Minniefield except that defendant states that she did burn the clothes. Defendant stated that Minniefield burned them. Addison stated that defendant, Robinson and Minniefield burned them.

At trial, the assistant State's Attorney read both confessions to the jury. Neither defendant Brown nor Addison testified or presented any evidence.

The jury found defendant guilty of armed robbery, home invasion and residential burglary. She was found not guilty of murder. The court found the residential burglary count was superseded by the home invasion count and entered judgment on the remaining counts. The same jury found Addison guilty of all offenses including murder.

At sentencing, the trial court imposed concurrent extended terms of 50 years in the Illinois Department of Corrections for armed robbery and home invasion. This appeal followed.

Defendant contends that: (1) the trial court erred in denying her a separate trial; (2) the court's comments during *voir dire* amounted to reversible error; and (3) the court abused its discretion in sentencing.

I

Defendant contends that under *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, and *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, a severance should have been granted because the confession of the nontestifying codefendant admitted into evidence at their joint trial constituted a violation of her sixth amendment right to confrontation.

Prior to trial, the court denied defendant's motion to sever, apparently relying on *Parker v. Randolph* (1979), 442 U.S. 62, 60 L. Ed. 2d 713, 99 S. Ct. 2132, citing the interlocking nature of the codefendants' confessions. Since the time of the court's ruling, however, *Parker* has been overruled by *Cruz.*

In *Cruz*, the Supreme Court held that the sixth amendment bars the admission at a joint trial of a nontestifying codefendant's pretrial confession which incriminates and is not directly admissible against the defendant even though: (1) the jury is instructed not to consider the confession against the defendant; and (2) the defendant's own confession, corroborating that of there codefendant, is admitted against the defendant. (*Cruz*, 481 U.S. at 192, 95 L. Ed. 2d at 171, 107 S. Ct. at 1718.) The State challenges this application of *Cruz.*

Defendant also asserts that even if the sixth amendment was not violated, admission of the nontestifying codefendant's statement violated Illinois evidentiary law prohibiting hearsay. In *People v. Duncan* (1988), 124 Ill. 2d 400, 530 N.E.2d 423, the Illinois Supreme Court held that admission of such statements at joint trials have been allowed only reluctantly with proper limiting instructions, and only if the statements are cleansed of all references to a nondeclaring defendant. Thus, the choices in such circumstances are severance, nonuse of a nontestifying codefendant's admissions, or redaction to eliminate all reference to the implicated defendant. 124 Ill. 2d at 412.

■ In the instant case, assuming the violation of defendant's sixth amendment rights and the Illinois hearsay rule, defendant's conviction can be affirmed because, under the facts of this case, the violations are harmless beyond a reasonable doubt.

■ In *Schneble v. Florida* (1972), 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056, the United States Supreme Court held that a violation of the *Bruton* rule does not automatically require reversal of the conviction.

> "In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admission is so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission

was harmless error." *Schneble*, 405 U.S. at 430, 31 L. Ed. 2d at 344, 92 S. Ct. at 1059.

See also *People v. Nunn* (1989), 184 Ill. App. 3d 253 (failure to sever is not ground for reversal if it can be said that such failure was harmless beyond a reasonable doubt).

Thus, in the case *sub judice*, we conclude that failure to sever was harmless beyond a reasonable doubt.

Judgment against defendant was entered for armed robbery and home invasion. Codefendants Addison and Robinson were convicted of the same plus the murder of Helen Smith. All defendants were convicted under the theory of accountability. A person is accountable for the actions of another when "[e]ither before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1985, ch. 38, par. 5—2(c).) The offense of armed robbery is committed when by use of force or by threatening the imminent use of force while armed with a dangerous weapon one takes property from a person or presence of another. (Ill. Rev. Stat. 1985, ch. 38, par. 18—2.) The offense of home invasion is committed when a person, not a peace officer in the line of duty, without authority "knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and *** (2) [i]ntentionally causes any injury to any person or persons within such dwelling place." Ill. Rev. Stat. 1985, ch. 38, par. 12—11(a)(2).

Defendant Brown's own confession states how she, Addison and Robinson formulated a plan to get money from "the old lady." One of the defendants had a pistol. They ·checked to be sure the victim was at home. After they entered the home, it was agreed that Addison and Robinson "would tie the lady up ***. We agreed I was to go to the back and find the money." Defendant Brown saw Robinson beating the victim with her fist in the face. She saw egg shells, blood, and paint on the victim. The victim's feet and hands were bound and a blue scarf was wrapped around her neck and tied to the door knob. This resulted in death by strangulation. When they left the home, they took credit cards, two televisions, a telephone and telephone answering machine, a bag of wine, underwear and jewelry.

In addition, defendant's own statement is corroborated by other witnesses. The testimony of Minniefield and Smith regarding the gun and the property taken from the victim's home matches defendant's statement. A detective testified regarding the condition of the murder scene which supported defendant's description. The testimony of

Hamilton and Barton also corroborate the property taken from the home.

In light of the foregoing, we find the evidence of defendant's guilt of armed robbery and home invasion to be so overwhelming and the prejudicial effect of codefendant's confession so insignificant by comparison that any improper use of codefendant's statement was harmless beyond a reasonable doubt.

## II

■ Defendant also argues that certain comments by the trial court during *voir dire* amount to reversible error. Defendant first contends that the court improperly commented on the fact that the State was not seeking the death penalty against her. Defendant, however, did not object at trial to this statement nor was it included in her motion for a new trial. It is well established that the absence of both an objection at trial and in a written post-trial motion constitutes a waiver of the issue. (*People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124, *cert. denied* (1988), ___ U.S. ___, 102 L. Ed. 2d 263, 109 S. Ct. 274.) Thus, defendant has waived this issue on appeal.

■ Second, defendant contends that the court improperly commented that "most of these cases, depending on the outcome of them, a great majority of them are appealed." However, due to the overwhelming evidence of guilt of defendant's convictions for armed robbery and home invasion, we cannot say that such comments resulted in any prejudice or materially affected the outcome of the trial, especially in light of the jury's acquittal on the murder charge. (See *People v. Cobbins* (1987), 162 Ill. App. 3d 1010, 516 N.E.2d 382.) Thus, we find any error to be harmless beyond a reasonable doubt.

## III

*Defendant* contends that in sentencing, the court: (1) improperly sentenced her to an extended term; and (2) imposed an excessive sentence.

■ When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty, or when the felony was committed against a person 60 years of age or older, the court may consider an extended-term sentence. Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2.

In the instant case, the evidence illustrates that the victim was 69 years of age. Further, defendant's own statement asserts that she saw codefendant Robinson beating this 69-year-old woman in the face

with her fist. She saw the victim covered with egg shells, paint, blood, bound at the feet and hands, and tied to a door knob with a scarf wrapped around her neck. Defendant left this 69-year-old woman in this condition, taking a few of the victim's possessions. The court, in addition to the victim's age, considered these surrounding circumstances and found them to be exceptionally brutal or heinous indicative of wanton cruelty and, therefore, imposed an extended term.

Armed robbery and home invasion are both Class X offenses with a permissible range of 6 to 30 years. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—11(b), 18—2(b), 1005—8—1(a)(3).) The range of extended-term sentences is 30 to 60 years. (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—2(a)(2).) Defendant received two concurrent sentences of 50 years.

■ Absent an abuse of discretion by the trial court, a sentence may not be altered on review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 153, 368 N.E.2d 882.) An appellate court may not substitute its judgment for that of the trial court merely because it would have balanced the factors differently, especially where the sentence imposed is within the statutory limitations. *People v. Lambrechts* (1977), 69 Ill. 2d 544, 559, 372 N.E.2d 641.

■ In light of the foregoing, we cannot say that the court abused its discretion in sentencing defendant to two 50-year, concurrent, extended-term sentences.

Accordingly, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

SCARIANO and DiVITO, JJ., concur.