THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES KUBIK, Defendant-Appellant.

First District (2nd Division)   No. 1—87—1525

Opinion filed May 21, 1991.

Randolph N. Stone, Public Defender, of Chicago (James W. Younger, Jr., Ronald P. Alwin, and Timothy J. Leeming, Assistant Public Defenders, of counsel), for appellant.

John O'Malley, State's Attorney, of Chicago (Inge Fryklund, Kevin Sweeney, and James Veldman, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

Following a jury trial, defendant James Kubik was found guilty of murder, rape, and conspiracy to commit both murder and rape. (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1, 11—1, 8—2.) He received consecutive prison terms of 40 years for murder and 30 years for rape. The circuit court had denied a motion for severance and, during the joint trial, admitted defendant's confession with the interlocking confessions of two nontestifying codefendants. Defendant appealed, his conviction was affirmed (*People v. Visnack* (1985), 135 Ill. App. 3d 113, 481 N.E.2d 744), and the Illinois Supreme Court denied leave to appeal. Defendant appeals from the dismissal of his petition for relief under the Post-Conviction Hearing Act (Ill. Rev. Stat. 1985, ch. 38, par. 122—1 *et seq.*).

Defendant was tried jointly with codefendants Daniel Visnack and Randall Weidner for the rape and murder of Visnack's wife. Defendant's confession revealed the following. On August 6, 1979, Visnack offered defendant and Weidner a car, money, and a gun in exchange for the murder of Sharon Visnack. On the morning of August 7, 1979, defendant and Weidner went to Visnack's apartment and gained access with a key that Visnack had provided. Defendant entered Sharon's bedroom, grabbed her, tied her hands behind her back, taped her mouth with duct tape that he had brought from his home, and raped her. He then went through the apartment looking for something to take. Later, defendant placed a plastic bag over Sharon's head and secured it with duct tape. After she managed to rip the bag off her head, defendant placed another plastic bag over her head and used more duct tape. Sharon could not free herself and died from asphyxiation.

Defendant stated that since he wanted the intrusion to look like a burglary, he "messed up" the apartment. To hide the fact that he had a key, defendant found a screwdriver in Visnack's toolbox and used it to break the lock on the door. Thereafter, he returned to his parents' home and burned some of his clothing as well as Visnack's screwdriver in his barbecue grill.

On August 14, 1979, defendant was arrested by Officer Kelly Matthews of the Calumet City police department; he was advised of his constitutional rights and taken to the police station. At the station, defendant again received his constitutional rights and he confessed to the crimes. Later, defendant gave a second confession in the presence of several police officers, an assistant State's Attorney, and a court reporter. His confession was corroborated by the condition of the body and the evidence found at the crime scene.

The police also found independent evidence linking defendant to the rape and murder. At the time of his arrest, police officers matched defendant's shoeprint with a print they had found on a plastic bag at the crime scene. During a search of defendant's residence, police found a roll of duct tape that matched a piece taken from Sharon's body. A search of defendant's grill revealed the screwdriver that he had used to break the lock on Visnack's door. Codefendants Visnack and Weidner also gave confessions which revealed the same basic facts contained in defendant's confession.

Prior to trial, defendant filed a motion to suppress the confessions. He asserted that they were the product of an earlier statement to him by Officer Matthews to the effect that he would get the electric chair if he did not give a statement. He also asserted that he had informed a priest about Matthews' alleged threat, although the priest had not heard the threat and could not substantiate what defendant had told him.

At the hearing on the motion, defendant reiterated his contention that his confession was involuntary. The priest's testimony was not offered and defendant's attorney did not call every State witness who was present when defendant gave his second confession. The circuit court denied the motion to suppress the confessions as well as a motion for severance which had also been filed.

During their joint trial, none of the codefendants testified. The jury heard the confessions, including a tape recording of Visnack's confession. The circuit court instructed the jury to consider each codefendant's confession only against the one who gave it. The independent evidence linking defendant to the rape and murder was also admitted.

On direct appeal, defendant argued, *inter alia,* that the circuit court erred in denying defendant's motion for a severance and that the prosecutor's improper comments during closing argument resulted in prejudice. As noted previously, defendant's conviction was affirmed and the Illinois Supreme Court denied leave to appeal.

Subsequently, defendant filed a petition for a writ of *habeas corpus* in the United States District Court for the Southern District of Illinois. On September 17, 1986, defendant voluntarily dismissed the petition. On September 18, 1986, defendant filed for relief under the Post-Conviction Hearing Act. The State responded with a motion to dismiss. On May 17, 1987, the circuit court granted the motion without an evidentiary hearing. This appeal followed.

# I

Defendant first maintains that his rights under the confrontation clause of the sixth amendment to the United States Constitution were violated through the admission of his nontestifying codefendants' interlocking confessions at their joint trial. He argues that the Supreme Court's pronouncement in *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, created a new procedural rule that bars the admission of a nontestifying codefendant's interlocking confession. In the alternative, defendant argues that *Cruz* reaffirmed a more venerable interpretation of the confrontation clause. Under either analysis, defendant maintains that *Cruz* should be applied retroactively on collateral review. He therefore argues that the circuit court's dismissal of his post-conviction petition without an evidentiary hearing was error.

The State maintains that defendant raised this issue on direct appeal, albeit before *Cruz* was decided, and therefore collateral review is precluded by the doctrine of *res judicata.* The State also argues that *Cruz* should not be given retroactive application on collateral review. Alternatively, the State maintains that the admission of the two nontestifying codefendants' confessions constituted harmless error in light of the overwhelming evidence against defendant.

██ The Post-Conviction Hearing Act provides that "[a]ny person imprisoned in the penitentiary who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of the State of Illinois or both may institute a proceeding under this Article." (Ill. Rev. Stat. 1985, ch. 38, par. 122—1.) (Compare Illinois' collateral review mechanism with the writ of *habeas corpus,* 28 U.S.C. §2254 (1988).) The purpose of the Act is "to afford to the convicted an op-

portunity to inquire into the constitutional integrity of the proceedings in which the judgment was entered." *People v. Pier* (1972), 51 Ill. 2d 96, 98, 281 N.E.2d 289, 290. See *People v. Howard* (1981), 94 Ill. App. 3d 797, 798-99, 419 N.E.2d 702, 704.

■ A defendant is entitled to an evidentiary hearing on a petition for post-conviction relief when he alleges a substantial constitutional deprivation. (Ill. Rev. Stat. 1985, ch. 38, par. 122—1; *People v. Albanese* (1988), 125 Ill. 2d 100, 104-05, 531 N.E.2d 17, 23; *People v. James* (1986), 111 Ill. 2d 283, 291-92, 489 N.E.2d 1350, 1354.) The allegations must contain a sufficient factual recounting of the basis for defendant's post-conviction claim. (*People v. Porter* (1988), 122 Ill. 2d 64, 73-74, 521 N.E.2d 1158, 1161-62; *People v. Potter* (1988), 174 Ill. App. 3d 217, 218-19, 528 N.E.2d 373, 374-75; *People v. Dredge* (1986), 148 Ill. App. 3d 911, 913, 500 N.E.2d 445, 446.) In this case, defendant alleged that he was denied a fair trial because the court denied his motion for severance and admitted his nontestifying codefendants' inculpating confessions at their joint trial.

■ The confrontation clause guarantees an accused's right of cross-examination; its reach extends to the States through the fourteenth amendment to the United States Constitution. (*Cruz v. New York*, 481 U.S. at 189, 95 L. Ed. 2d at 169, 107 S. Ct. at 1717; *Pointer v. Texas* (1965), 380 U.S. 400, 403, 13 L. Ed. 2d 923, 926, 85 S. Ct. 1065, 1067; *United States ex rel. Sanders v. Lane* (7th Cir. 1987), 835 F.2d 1204, 1206.) Its purpose is to ensure the fairness and accuracy of criminal trials. (*Parker v. Randolph* (1979), 442 U.S. 62, 73, 60 L. Ed. 2d 713, 733, 99 S. Ct. 2132, 2139 (opinion of Rehnquist, J.), citing *Dutton v. Evans* (1970), 400 U.S. 74, 89, 27 L. Ed. 2d 213, 227, 91 S. Ct. 210, 220; *Chambers v. Mississippi* (1973), 410 U.S. 284, 295, 35 L. Ed. 2d 297, 309, 93 S. Ct. 1038, 1045-46; *Roberts v. Russell* (1968), 392 U.S. 293, 294, 20 L. Ed. 2d 1100, 1102, 88 S. Ct. 1921, 1922; *Bruton v. United States* (1968), 391 U.S. 123, 136, 20 L. Ed. 2d 476, 485, 88 S. Ct. 1620, 1628.) The right of cross-examination is a fundamental guarantee of liberty, and its roots are found deep within the philosophical underpinnings of our adversarial system. See, *e.g., Thompson v. South Carolina* (D. S.C. 1987), 672 F. Supp. 896, 900, citing *Pointer v. Texas*, 380 U.S. at 404, 13 L. Ed. 2d at 926-27, 85 S. Ct. at 1068.

The United States Supreme Court's interpretation of the confrontation clause, in the context of the admissibility of a nontestifying codefendant's interlocking confession, has significantly changed since defendant was tried and took his direct appeal. In *Bruton v. United States* (391 U.S. at 137, 20 L. Ed. 2d at 485, 88 S. Ct. at 1628), the

Court held that an accused's rights under the confrontation clause were violated when a nontestifying codefendant's inculpating confession was admitted at their joint trial. The Court further held that limiting instructions were not "an adequate substitute for [the accused's] constitutional right of cross-examination." *Bruton*, 391 U.S. at 137, 20 L. Ed. 2d at 485, 88 S. Ct. at 1628.

In *Parker v. Randolph* (442 U.S. at 75, 60 L. Ed. 2d at 724-25, 99 S. Ct. at 2140), a divided Court, in a plurality opinion, held that the "admission of interlocking confessions with proper limiting instructions conforms to the requirements of the Sixth and Fourteenth Amendments to the United States Constitution." The Court stated that "the incriminating statements of a codefendant will seldom, if ever, be of the 'devastating' character referred to in *Bruton* when the incriminated defendant has admitted his own guilt." *Parker*, 442 U.S. at 73, 60 L. Ed. 2d at 723, 99 S. Ct. at 2139. See *People v. Davis* (1983), 97 Ill. 2d 1, 452 N.E.2d 525 (adopting *Parker* in Illinois); *People v. Bassett* (1974), 56 Ill. 2d 285, 294-95, 307 N.E.2d 359, 365.

Later, in *Cruz v. New York* (481 U.S. at 193, 95 L. Ed. 2d at 172, 107 S. Ct. at 1719), the Court reversed *Parker* and held:

> "[W]here a nontestifying codefendant's confession incriminating the defendant is not directly admissible against the defendant, see *Lee v. Illinois* [(1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056], the Confrontation Clause bars its admission at their joint trial, even if the jury is instructed not to consider it against the defendant, and even if the defendant's own confession is admitted against him."

The *Cruz* Court explicitly rejected *Parker's* "interlocking exception" and reasoned that " 'interlocking' bears a positively inverse relationship to devastation." (*Cruz*, 481 U.S. at 192, 95 L. Ed. 2d at 171, 107 S. Ct. at 1718.) The view espoused in *Parker* was controlling at the time of defendant's trial and direct appeal. See *People v. Visnack* (1985), 135 Ill. App. 3d 113, 124, 481 N.E.2d 744, 751.

In *Teague v. Lane* (1989), 489 U.S. 288, 300, 103 L. Ed. 2d 334, 349, 109 S. Ct. 1060, 1069, quoting *Bowen v. United States* (1975), 422 U.S. 916, 920, 45 L. Ed. 2d 641, 647, 95 S. Ct. 2569, 2573, the Court stated that "when 'issues of both retroactivity and application of constitutional doctrine are raised,' the retroactivity issue should be decided first." No reported Illinois authority addresses the issue of whether *Cruz* carries a retroactive application under the Post-Conviction Hearing Act. We resolve that question today.

Initially, we must decide whether *Cruz* created a new procedural rule or reaffirmed a more venerable interpretation of the confronta-

tion clause. (See *Desist v. United States* (1969), 394 U.S. 244, 263, 22 L. Ed. 2d 248, 263, 89 S. Ct. 1030, 1041 (Harlan, J., dissenting).) The latter always carries a retroactive application on collateral review (see *Yates v. Aiken* (1988), 484 U.S. 211, 215, 98 L. Ed. 2d 546, 553, 108 S. Ct. 534, 537; *United States v. Johnson* (1982), 457 U.S. 537, 549, 73 L. Ed. 2d 202, 213, 102 S. Ct. 2579, 2586), while the former "should be applied retroactively if it places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe' [or] *** if it requires the observance of 'those procedures that ... are "implicit in the concept of ordered liberty." ' " (*Teague v. Lane*, 489 U.S. at 311, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075, quoting *Mackey v. United States* (1971), 401 U.S. 667, 692-93, 28 L. Ed. 2d 404, 420-21, 91 S. Ct. 1160, 1180 (Harlan, J., concurring in part and dissenting in part), quoting *Palko v. Connecticut* (1937), 302 U.S. 319, 325, 82 L. Ed. 288, 292, 58 S. Ct. 149, 152.) Thus, *Teague* settled the long-standing debate by "adopt[ing] Justice Harlan's view of retroactivity for cases on collateral review." (*Teague*, 489 U.S. at 310, 103 L. Ed. 2d at 356, 109 S. Ct. at 1075.) *Teague* is now the law of the land. See *Saffle v. Parks* (1990), 494 U.S. 484, 487-88, 108 L. Ed. 2d 415, 424, 110 S. Ct. 1257, 1259-60.

In *Butler v. McKellar* (1990), 494 U.S. 407, 412, 108 L. Ed. 2d 347, 355, 110 S. Ct. 1212, 1216, quoting *Penry v. Lynaugh* (1989), 492 U.S. 302, 314, 106 L. Ed. 2d 256, 275, 109 S. Ct. 2934, 2944, and *Teague v. Lane* (489 U.S. at 301, 103 L. Ed. 2d at 349, 109 S. Ct. at 1070), the Court reasoned that "a case announces a 'new rule' when it breaks new ground or imposes a new obligation on the States or the Federal Government. [Citation.] Put differently, and, indeed, more meaningfully for the majority of cases, a decision announces a new rule ' "if the result was not *dictated* by precedent existing at the time defendant's conviction became final." ' " (Emphasis in original.) *Butler* and *Teague* were decided in the context of the writ of *habeas corpus*, the Federal mechanism for collateral review. This rationale has been adopted for purposes of Illinois' Post-Conviction Hearing Act by the Illinois Supreme Court in *People v. Flowers* (1990), 138 Ill. 2d 218, 516 N.E.2d 674.

■ The Illinois courts have interpreted *Cruz* as a new procedural rule. Severance is now an issue where a nontestifying codefendant's interlocking confession is sought to be admitted at a joint trial. (See *People v. Duncan* (1988), 124 Ill. 2d 400, 412, 530 N.E.2d 423, 426; *People v. Collins* (1989), 186 Ill. App. 3d 35, 41, 541 N.E.2d 1308, 1311; *People v. Smith* (1988), 172 Ill. App. 3d 94, 104, 526 N.E.2d 849, 855; *People v. Wilson* (1987), 161 Ill. App. 3d 995, 1000-02, 515

N.E.2d 812, 815-16; *People v. Elston* (1987), 158 Ill. App. 3d 652, 655, 511 N.E.2d 710, 712-13; *People v. Lincoln* (1987), 157 Ill. App. 3d 700, 704, 510 N.E.2d 1026, 1029-30.) Therefore, *Cruz* imposed a new obligation on the State. Moreover, because the confessions were interlocking, the circuit court's denial of the severance motion was dictated by *Parker* at the time defendant's conviction became final.

We note that another court has reached the opposite conclusion, although before *Butler*, and retroactively applied *Cruz* as a reaffirmation of existing law. (See *People v. Graham* (1988), 531 N.Y.S.2d 172, 177, 140 Misc. 2d 417, ____.) In *Graham*, the New York court seemingly relied on *Cruz' dictum* and viewed the Court's holding "as 'no more than [a] reaffirm[ation of the] central proposition of *Bruton*.' " (*Graham*, 531 N.Y.S.2d at 177, 140 Misc. 2d at ____, quoting *Cruz v. New York*, 481 U.S. at 193, 95 L. Ed. 2d at 172, 107 S. Ct. at 1719.) That analysis, however, does not bridge the eight-year gap between *Parker* and *Cruz*. The *Graham* court did go on to reason that "the application of [the] traditional retroactivity analysis leads [us] to the same result." *Graham*, 531 N.Y.S.2d at 177-78, 140 Misc. 2d at ____.

■ The next question is whether the new rule announced in *Cruz* carries a retroactive application on collateral review. The relevant exception to the general rule of nonretroactivity is limited to "those procedures that ... 'are implicit in the concept of ordered liberty.' " (*Teague v. Lane*, 489 U.S. at 307, 103 L. Ed. 2d at 353, 109 S. Ct. at 1073.) In *Sawyer v. Smith* (1990), 497 U.S. 227, 242, 111 L. Ed. 2d 193, 211, 110 S. Ct. 2822, 2831, quoting *Teague v. Lane* (489 U.S. at 311, 103 L. Ed. 2d at 357, 109 S. Ct. at 1076), the Court stated that "[a] rule that qualifies under this exception must not only improve accuracy, but also 'alter our understanding of the *bedrock procedural elements*' essential to the fairness of a proceeding." (Emphasis in original.) As for the element of accuracy, the *Cruz* Court held that a nontestifying codefendant's interlocking confession was inadmissible at a joint trial. The application of *Cruz* directly impacts on what evidence is admissible at trial. Therefore, *Cruz* improved the accuracy of the truth-finding function. As for the second element, *Cruz* altered our understanding of the sixth amendment. The nontestifying codefendant's interlocking confession was admissible under *Parker*'s interlocking exception. The Court's pronouncement in *Cruz* extinguished that exception. It follows that our interpretation of the confrontation clause, in this narrow context, has significantly changed. The right of cross-examination is essential to the fairness and the constitutional integrity of a criminal proceeding. Accordingly, the rule announced in *Cruz* satisfies both elements.

We reject the State's assertion that *Teague* stands for the proposition that decisions like *Cruz* never carry a retroactive application on collateral review. In so arguing, the State relies on *People v. James* (1986), 111 Ill. 2d 283, 289, 489 N.E.2d 1350, 1353. However, the *James* court addressed the collateral retroactivity of the United States Supreme Court's pronouncement in *Edwards v. Arizona* (1981), 451 U.S. 477, 68 L. Ed. 2d 378, 101 S. Ct. 1880. Our supreme court noted that *Edwards* did not carry a retroactive application because it "bears only a tangential relation to truthfinding at trial." (*People v. James*, 111 Ill. 2d at 289, citing *Solem v. Stumes* (1984), 465 U.S. 638, 79 L. Ed. 2d 579, 104 S. Ct. 1338 (holding that *Edwards* did not carry a retroactive application under the writ of *habeas corpus*).) We do not address the other examples cited by the State as they do not address the issue presented in this case.

Returning to the issue of the sixth amendment right of cross-examination, *Bruton* was given full retroactive application to cases on *habeas* review in *Roberts v. Russell* (392 U.S. at 294-95, 20 L. Ed. 2d at 1102-03, 88 S. Ct. at 1922). The Illinois Supreme Court interpreted *Roberts* as mandating a retroactive application of *Bruton* under Illinois' Post-Conviction Act, despite prior affirmance on appeal. (See *People v. Ikerd* (1970), 47 Ill. 2d 211, 212-13, 265 N.E.2d 120, 121; *People v. Davis* (1970), 46 Ill. 2d 554, 557, 264 N.E.2d 140, 142; *People v. Somerville* (1969), 42 Ill. 2d 1, 6, 245 N.E.2d 461, 464-65.) Today, the Federal courts retroactively apply *Cruz* on *habeas corpus* review. (See *United States ex rel. Lee v. Flannigan* (7th Cir. 1989), 884 F.2d 945, 951; *Sanders v. Lane* (7th Cir. 1987), 835 F.2d 1204, 1206; *Reddy v. Coombe* (S.D.N.Y. 1990), 730 F. Supp. 556, 565-66.) Our research has not disclosed any authority supporting the proposition that *Cruz* does not retroactively apply on collateral review.

Our rationale is consistent with Illinois' "fundamental fairness" exception to the finality rule of *res judicata*. (See *Teague v. Lane*, 489 U.S. at 297, 103 L. Ed. 2d at 347, 109 S. Ct. at 1068 (discussing Illinois' Post-Conviction Hearing Act), citing *People v. Ikerd*, 47 Ill. 2d at 212-13.) In defining fundamental fairness, " ' "[t]he relevant frame of reference ... is not the purpose of the new rule whose benefit the [defendant] seeks, but instead the purposes for which the [mechanism for collateral review] is made available." ' " (*Butler v. McKellar* (1990), 494 U.S. at 413, 108 L. Ed. 2d at 355, 110 S. Ct. at 1216, quoting *Teague v. Lane*, 489 U.S. at 306, 103 L. Ed. at 352, 109 S. Ct. at 1072, quoting *Mackey*, 401 U.S. at 682, 28 L. Ed. 2d at 414, 91 S. Ct. at 1175 (opinion of Harlan, J.).) The framework of the Post-Conviction Hearing Act enables courts to review the constitutional in-

tegrity or "fundamental fairness" of the trial proceedings. A trial is fundamentally fair and thus meets constitutional muster if "conducted under those procedures essential to the substance of a full hearing" which are " 'implicit in the concept of ordered liberty.' " (*Mackey*, 401 U.S. at 693, 28 L. Ed. 2d at 421, 91 S. Ct. at 1180, quoting *Palko*, 302 U.S. at 325, 82 L. Ed. at 292, 58 S. Ct. at 152.) Accordingly, based on the fundamental conceptual nature of the right of cross-examination, we conclude that *Cruz* carries a retroactive application under the Post-Conviction Hearing Act.

Moreover, the writ of *habeas corpus* permits the Federal courts to review State court decisions involving Federal constitutional claims such as the one presented by defendant in this case. Although Illinois' retroactivity analysis need not comport with the analysis employed by the Federal courts (see *People v. Eyler* (1989), 133 Ill. 2d 173, 225, 549 N.E.2d 268, 291), the availability of the Federal collateral remedy, read inconsistently with Illinois', would invite inconsistent results and would obscure finality. Application of Illinois' Post-Conviction Hearing Act should thus be consistent with the Federal writ of *habeas corpus* and *Cruz* must extend to those defendants seeking post-conviction review.

The State next asserts that the *Bruton-Cruz* error was harmless in light of the overwhelming evidence against defendant. Although it is true that a *Bruton-Cruz* violation can be harmless error (see *Cruz*, 481 U.S. at 194, 95 L. Ed. 2d at 172, 107 S. Ct. at 1719; *Schneble v. California* (1972), 405 U.S. 427, 430-32, 31 L. Ed. 2d 340, 344-45, 92 S. Ct. 1056, 1059-60; *Harrington v. California* (1969), 395 U.S. 250, 252, 23 L. Ed. 2d 284, 286-87, 89 S. Ct. 1726, 1727-28; *People v. Silas* (1989), 185 Ill. App. 3d 920, 928, 541 N.E.2d 1239, 1244; *People v. Nunn* (1989), 184 Ill. App. 3d 253, 267, 541 N.E.2d 182, 192; *People v. Brown* (1989), 184 Ill. App. 3d 569, 574, 540 N.E.2d 500, 503), that determination should be made at the circuit court level through an evidentiary hearing. Considering, however, that this is a case of first impression in Illinois and that defendant and the State have stipulated to the harmless error question being decided here, we address the issue.

In reviewing a *Bruton-Cruz* violation, the court must weigh the properly admitted evidence of guilt against the possible prejudicial effect of the codefendant's interlocking confession in determining whether such admission was harmless beyond a reasonable doubt. (See *Schneble v. California*, 405 U.S. at 430, 31 L. Ed. 2d at 344, 92 S. Ct. at 1059; *People v. Brown*, 184 Ill. App. 3d at 574-75, 540 N.E.2d at 503.) In defendant's direct appeal, we considered the evi-

dence of guilt to be overwhelming. *People v. Visnack*, 135 Ill. App. 3d at 124, 481 N.E.2d at 751.

■ The jury heard defendant's confession which detailed the rape and murder of Sharon Visnack. The substance of the confession revealed that Sharon had been raped; defendant had placed a plastic bag over her head; duct tape was used to secure the bag; a second bag was used after Sharon freed herself from the first; a screwdriver had been used to break the lock on the door; Visnack's apartment had been "messed up"; and Sharon had worn a nightgown when he assaulted her. These details matched the condition of the body and the surroundings in which it was found.

The jury also received independent evidence linking defendant to the rape and murder. Expert testimony established that the screwdriver found in defendant's grill was the one used to break Visnack's lock; the shoeprint found on a plastic bag at the crime scene matched defendant's shoeprint taken at the time of his arrest; and a piece of duct tape found on Sharon's body had been torn from a roll found in defendant's home. Based on the accuracy of defendant's confession, and the independent evidence linking him to the offenses, we hold that the admission of the codefendants' confessions was cumulative of the overwhelming evidence against defendant and, therefore, did not deny him a fair trial.

## II

Defendant next maintains that he was denied his sixth amendment right to effective assistance of counsel at trial and on direct appeal. He argues that his trial attorney was incompetent in failing to call a witness at the suppression hearing, failing to insist that all the State's witnesses be produced at the hearing, and failing to object to the prosecutor's comments during closing argument. Defendant also argues that his appellate attorney was incompetent for failing to raise the issue of his trial attorney's competence.

The State maintains that defendant's arguments concerning the competence of his trial attorney are barred as *res judicata*. The State also argues that his attorney's decisions were tactical in nature and therefore did not rise to the level of a sixth amendment violation. Alternatively, the State maintains that defendant was not prejudiced in light of the overwhelming evidence against him. Regarding defendant's allegations that his appellate counsel was incompetent, the State argues that the attorney acted in a reasonably prudent manner.

■ "The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical

to the ability of the adversarial system to produce just results." (*Strickland v. Washington* (1984), 466 U.S. 668, 685, 80 L. Ed. 2d 674, 692, 104 S. Ct. 2052, 2063. See *People v. Johnson* (1989), 128 Ill. 2d 253, 265-66, 538 N.E.2d 1118, 1123; *People v. Caballero* (1989), 126 Ill. 2d 248, 260, 533 N.E.2d 1089, 1091; *People v. Albanese* (1984), 104 Ill. 2d 504, 524-25, 473 N.E.2d 1246, 1255 (adopting *Strickland* in Illinois).) " 'The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.' " *People v. Albanese*, 104 Ill. 2d at 525, quoting *Strickland*, 466 U.S. at 686, 80 L. Ed. 2d at 692-93, 104 S. Ct. at 2064.

In *Strickland*, the Court announced two components used to test the issue of an ineffective assistance of counsel claim.

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.

See *People v. Flores* (1989), 128 Ill. 2d 66, 80-81, 538 N.E.2d 481, 485; *People v. Johnson* (1989), 128 Ill. 2d 253, 265-66; *People v. Bryant* (1989), 128 Ill. 2d 448, 458, 539 N.E.2d 1221, 1226; *People v. Jimerson* (1989), 127 Ill. 2d 12, 32, 535 N.E.2d 889, 897-98; *People v. Harris* (1988), 123 Ill. 2d 113, 155, 526 N.E.2d 335, 353.

■ Initially, we address defendant's claims regarding the competence of his trial attorney. Defendant argues that his attorney's failure to call the priest as a witness at the suppression hearing was tantamount to a sixth amendment violation. We disagree for two reasons. First, the decision of whether to call a witness is largely a matter of tactics. (*People v. Flores* (1989), 128 Ill. 2d at 85-86, 538 N.E.2d at 485-86; *People v. Wright* (1986), 111 Ill. 2d 18, 26-27, 488 N.E.2d 973, 977.) Counsel is given wide latitude in making tactical decisions. (*Strickland*, 466 U.S. at 689, 80 L. Ed. 2d at 694, 104 S. Ct. at 2065.) Only the most egregious of tactical blunders may provide a basis for a sixth amendment claim. Therefore, defendant cannot satisfy the first component. Second, we do not see any material benefit in the priest's testimony. He did not hear Officer Matthews' alleged threat and could not offer any direct evidence. At best, the witness could provide only

evidence of a prior consistent statement as to what defendant had told him. Therefore, defendant cannot claim that the outcome of the suppression hearing would have been any different and cannot satisfy the second component of his claim.

Defendant next argues that his attorney was incompetent in failing to insist that all the State's witnesses be produced at the suppression hearing. We find no merit in this contention either. Based on defendant's recounting of the facts, the only persons who were present at the time of Officer Matthews' alleged threat were the officer and defendant. Both testified at the hearing. The only persons required to be present at a hearing to suppress a confession are those whose testimony is material to the question of voluntariness. (*People v. Monroe* (1981), 95 Ill. App. 3d 807, 812, 420 N.E.2d 544, 548. See *People v. Jones* (1984), 128 Ill. App. 3d 842, 846-48, 471 N.E.2d 590, 594.) The State was not required to produce every person who came in contact with defendant after Officer Matthews' alleged threat. Therefore, no other testimony was required.

Defendant next maintains that his attorney was incompetent in failing to object to certain comments of the prosecutor in closing argument. We have considered these allegations and find them lacking merit. On defendant's direct appeal, we concluded that although counsel made only 5 objections to the 15 instances of improper conduct complained of, those errors did not rise to the level of plain error required for consideration under Supreme Court Rule 615(a) (134 Ill. 2d R. 615(a)). (*People v. Visnack*, 135 Ill. App. 3d at 125, 481 N.E.2d at 752.) Our conclusion was based on the "overwhelming evidence against defendants." (*Visnack*, 135 Ill. App. 3d at 124, 481 N.E.2d at 751.) We affirm our earlier conclusion.

Since defendant has not satisfied the *Strickland* requirements regarding his trial attorney, we find no merit in his contention that his appellate attorney was incompetent.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SCARIANO, P.J., and HARTMAN, J., concur.