THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRENCE McCARTHY, Defendant-Appellant.

First District (2nd Division)    No. 80-900

Opinion filed December 8, 1981.

Burke and Smith, Chartered, of Chicago (Raymond J. Smith, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Ruth Stern Geis, and James Klein, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DOWNING delivered the opinion of the court:

This case arises out of the shooting of Dolores Custodio by Terrence McCarthy, defendant, an off-duty Chicago police officer. Defendant conceded that he shot Custodio, but claimed the shooting was in self-defense. Defendant was charged by information with attempted murder, three counts of aggravated battery, and four counts of armed violence. (Ill. Rev. Stat. 1979, ch. 38, pars. 8—4, 12—4, 33A—2.) After a bench trial, defendant was found guilty of one count of aggravated battery and sentenced to 30 months probation.

Defendant claims that he was not proved guilty beyond a reasonable doubt. Because we feel the evidence did not prove defendant guilty beyond a reasonable doubt, we will not address various alleged trial errors raised by the defendant.

Dolores Custodio was smelt fishing in Lake Michigan at Montrose Harbor in the city of Chicago with seven other people. They left the harbor at 4:30 a.m. on April 29, 1979, having arrived the previous evening. Some persons in the group drank beer while fishing. The party left the harbor in the car of Dennis Edman, Custodio's cousin. Dennis was driving, Elias (Junior) Acevedo was next to him, and Kenneth Edman and Keith Edman were also in the front seat. In the back seat, from the driver's side to the passenger side, were Caesar Ortega, Dolores Custodio, and David James. Lying across the back seat and protruding from the rear passenger window was a flagpole that the group had taken from Waveland golf course.

The Edman car was southbound on Western Avenue, near Belmont, when there was contact between the flagpole and a car driven by defendant. Custodio claimed that, upon contact, the flagpole hit her in the face, causing substantial bleeding. Dennis Edman testified that he caught defendant's car at the next stoplight, told him that defendant had hurt one of his passengers, that they were going to the hospital, and that he had defendant's license number (BUM 1).

The occupants of the Edman car related the rest of the incident in a similar manner. While driving on Western Avenue, defendant's car started bumping Edman's. At one point, David James threw a full beer can at defendant's car. A green car, apparently acting in concert with defendant's car, cut off the Edman car. The Edman car then went in reverse with defendant's car in pursuit. The cars stopped. Defendant got out of his car

and came toward the Edman car with a gun in his hand. He started hitting the driver's window with the gun. Junior got out of the Edman car and ran to the nearby city of Chicago police station at Belmont and Western. Custodio told the defendant to leave them alone. Then defendant stepped back and shot her in the face. Defendant got into his car and drove away, while the Edman car remained parked. Most members of the Edman party stated that the police arrived within two to three minutes after the shot was fired; Custodio stated it was 15 minutes to a half hour.

Defendant claimed that, after the contact with the flagpole, the Edman car bumped his car. A green car voluntarily entered the chase after the Edman car. When defendant approached the Edman car on foot, he rapped on the window with his badge, stated his office, and ordered the occupants out of the car. Dolores Custodio said, "I'm going to kill you, you pig." Defendant saw her pointing a gun at him, so he stepped back and fired one shot. The Edman car[1] drove away, and defendant pursued it. He lost it, and attempted to find it for a half hour. Defendant then went to the 23d District police station at Addison and Halsted, and first went to the men's room. There, he was confronted by the captain, who informed defendant he was being sought and to whom defendant turned in his gun. Defendant's story was substantially corroborated by Tomalina Dedina, who was also in his car.

An investigating police officer testified on behalf of defendant that the Edman car and the area involved were searched but no flagpole was discovered.

A toy gun was found by the police in the glove compartment of the Edman car. Keith Edman, who was 12 years old, was playing with it throughout the evening, although Dolores Custodio denied any knowledge of its existence. Junior Acevedo told an investigating police officer that he thought the toy gun was on the floor of the auto during the incident, while Dennis James told the officer that he thought the gun was on the dashboard during the incident.

John Truppa, an elderly resident of the Belmont and Western area, stated that he heard a shot one night in April or May of 1979. He looked out the window a few minutes later and didn't see any cars. Defense counsel attempted to establish the date by the fact that Truppa read about the incident in the newspaper the next day. The trial court sustained the State's objection to this testimony.

The trial court found defendant guilty of aggravated battery and not guilty of attempted murder and armed violence. Defendant was sentenced to 30 months' probation.

---

[1] At oral argument before this court, defendant's lawyer suggested that the Edman car and group returned to the identical location by the time the police arrived. However, the record is not clear on this point.

## I

Defendant claims he was not proved guilty beyond a reasonable doubt. The trial produced two completely conflicting versions of the shooting of Dolores Custodio. The trial court believed the version of the occupants of the Edman car. In asking this court to reverse his conviction based on reasonable doubt, defendant is asking this court to review and evaluate the credibility of the witnesses. Defendant faces a strong presumption that the finding of the trier of fact with regard to the credibility of witnesses is correct.

A reviewing court may only disturb the trial court's finding as to credibility when the evidence is so improbable or unsatisfactory as to raise a reasonable doubt of guilt. (See, *e.g., People v. Gunderson* (1978), 66 Ill. App. 3d 516, 524, 383 N.E.2d 1296.) Where the evidence is merely conflicting, the reviewing court will not substitute its judgment for that of the trier of fact. (*People v. Gunderson* (1978), 66 Ill. App. 3d 516, 524.) This rule is not inflexible. When the record does not support the factual determinations, a court of review must reverse. *People v. Ivy* (1979), 68 Ill. App. 3d 402, 406, 386 N.E.2d 323; *People v. Seymour* (1977), 53 Ill. App. 3d 367, 372, 368 N.E.2d 1018 (probation revocation).

All the occurrence witnesses for the State were passengers in the car with Dolores Custodio. With the exception of David James and Elias Acevedo, they were relatives of and lived in the same apartment building as Custodio. Further, James and Acevedo were, respectively, 15 and 17 years old at the time of the occurrence and friends of the Edman family. Most of the occurrence witnesses conceded that they had all talked about the case together, and they all came to court together every day during the trial. At the time of the trial, Dolores Custodio had pending against defendant a personal injury claim, and some of the witnesses had spoken with her attorney about the case. Finally, many of the witnesses significantly changed their testimony at trial from earlier versions. The combination of these factors requires this court to carefully scrutinize the evidence.

Defendant claims that as he approached the car, Custodio verbally threatened him. He saw a gun and then fired at her. The occupants of the car deny the use of a gun by anyone in their car, yet a realistic-looking toy gun was found in their glove compartment. Everyone in the Edman car had a different story regarding the gun. Most conceded that the gun belonged to 12-year-old Keith Edman, who had been playing with it at the lake. Dolores Custodio was the only one who denied any knowledge of the existence of the gun, although David James and Elias Acevedo testified that she was present while Keith was playing with the gun. David James initially told police that the gun was on the dashboard of the car during the drive, but disavowed this position at trial, claiming he did not

see the gun in the car. Finally, Dennis and Keith Edman talked over their testimony before coming to court, and, as Dennis said, "We knew there might be an issue over the toy gun."

Under close scrutiny, the testimony of all the State's occurrence witnesses contains substantial discrepancies. Dolores Custodio, who had a personal injury claim pending against defendant, denied knowledge of the existence of the gun, even though it was displayed for some time in her presence. In her initial statement to the police on the evening of the incident, she did not mention anything about being hit in the face by the flagpole, the event which in her later story was the catalyst of the entire incident. Finally, in her earlier statement to the police, she told of obscenities being exchanged between the passengers of the two cars. At trial, she denied hearing any obscenities coming from her car.

Dennis Edman, the driver of the car and Custodio's cousin and neighbor, initially told police that defendant's gun discharged while defendant was banging on the window with it. At trial, he repudiated this version and told of defendant deliberately shooting into the car. In the interim, he had discussed the case with the other occupants of the car and Custodio's personal injury attorney. At the preliminary hearing, Dennis stated that he saw defendant reach out of his car and pull the flagpole. At trial, he denied seeing this. Also at the preliminary hearing, Edman testified that he shouted obscenities at defendant's car. At trial, he was not sure.

David James, who was 15 years old at the time of the incident, initially told police that the gun was on the dashboard of the car during the ride. At trial, he testified that he did not see the gun in the car.

Kenneth Edman, Dennis Edman's son, who was 17 years old at the time of the incident, also initially told police that defendant's gun discharged when banged on the car window. Like his father, he changed his story at trial. He admitted that he discussed his planned testimony with his father, and that he read the transcript of his father's preliminary hearing testimony several days before trial. Further, he testified that his father, Dennis Edman, shouted obscenities at defendant's car prior to any contact between the cars.

Elias (Junior) Acevedo was 16 years old at the time of the incident. His testimony is riddled with inconsistencies. All the occupants of the car testified that Junior ran to the police station for help. All the testimony was that he left before the shot was fired, and Junior stated that he was at the police station when he heard the shot. Yet the "flash message" that went out over the police radio was "woman shot."[2] Further, Junior and

---

[2] The record is silent as to where, when, and how the police received information regarding this incident.

most of the witnesses testified that Junior took two minutes to get to the police station and back. Junior claimed that Custodio was already removed from the scene when he returned, but others testified that she was still there. Finally, Junior initially told the police that he was in the car when defendant started banging on the window. At trial, he and all the others stated that Junior left to go to the police station prior to defendant's arrival at the car.

We must conclude that the testimony of the occupants of the Edman car raises a reasonable doubt concerning the incident. There are too many instances of witnesses changing their stories, too many details that are inconsistent, and too many details that are exactly the same in the testimony of several witnesses. The testimony of the victim Custodio is too conflicting and too inconsistent to be believed. We find the evidence so unsatisfactory that it cannot satisfy the requirement that defendant's guilt be proved beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed.[3]

Reversed.

HARTMAN, P. J., and STAMOS, J., concur.

---

[3] It is to be noted that defendant's brief in this court did not contain an appendix, a copy of the notice of appeal, or an index to the record on appeal. These omissions are in contravention of Supreme Court Rule 342. See People v. Mitchell (1981), 95 Ill. App. 3d 779, 792 n.4, 420 N.E.2d 415.