THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. VINCENT SILAS, Defendant-Appellant.

First District (3rd Division)   No. 1—86—2503

Opinion filed June 28, 1989.

Randolph N. Stone, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Carol L. Gaines, and Janet C. Mahoney, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE FREEMAN delivered the opinion of the court:

Defendant, Vincent Silas, was charged by indictment with two counts of armed robbery, two counts of armed violence, two counts of residential burglary, and two counts of home invasion. The indictment also charged James Fletcher (Fletcher) and Tina Silas. Defendant and Fletcher were tried jointly in a bench trial. Defendant was convicted on both counts of residential burglary and two counts of robbery, a lesser included offense of the armed robbery charged. The trial court sentenced defendant to concurrent terms of eight years' imprisonment for robbery and eight years for residential burglary.

Defendant appeals and raises the following contentions: (1) he was denied the effective assistance of counsel since his attorney failed to

move to sever the trial and to redact defendant's name from a statement given by Fletcher; (2) the trial court's failure to grant a severance, *sua sponte*, constituted plain error; (3) the trial court erroneously limited the cross-examination of witness Willie Patton; (4) defendant was not proved guilty beyond a reasonable doubt since the State's witnesses gave inherently incredible testimony; and (5) the multiple convictions entered against defendant violate State and Federal protections against double jeopardy.

For the reasons stated below, we affirm the judgment in part and vacate in part.

At trial the State called several witnesses. Willie Mae Patton, the victim, testified that she lived in an apartment at 5307 West Lake Street in Chicago. The apartment building has a locked door through which one must enter before climbing the stairs to Patton's apartment. Defendant lived in Patton's apartment from May or June 1985 until shortly before November 16, 1985, the date of the subject incident. John Palmore also lived in the apartment during most of that time. When defendant moved in, Palmore believed that defendant was Patton's brother. At some point, defendant forced Palmore out of the apartment. Patton stated that at some time, Palmore told her that he did not like defendant. Patton stated the reason was that defendant was living with Patton. In May or June 1985, defendant "jumped on" her, and then "jumped on" Palmore.

Patton further stated that she knew James Fletcher four or five years prior to the subject incident. Patton also knew Fletcher's common law wife, Willie Mae Randall. During the summer of 1985, Patton allowed Randall to store some bunk beds and other furniture in her apartment. After two months, defendant sold the beds. Patton then asked defendant to move out, which defendant did. Fletcher asked Patton about the beds, and appeared violent and called Patton names. Patton told him that she did not have the beds, and refused to pay for them. In early November 1985, Palmore moved back into Patton's apartment. Defendant was not living there at the time.

On November 16, 1985, around 6 p.m., Patton and Palmore were home installing a kitchen floor. They heard a knock at the door, and Patton looked out the window and saw Tina Silas. Patton had known Tina Silas for approximately five years and stated that Tina Silas occasionally visited her. Patton went downstairs and let Tina Silas into the building and then into the apartment. Tina Silas asked Patton and Palmore for a quarter for a telephone call. Palmore gave her a quarter, and Tina Silas left the apartment stating that she would return.

After 10 minutes, there was another knock at the door. Patton

looked out the window and saw Tina Silas alone. Patton went downstairs, and as she opened the door, she saw defendant and Fletcher with Tina Silas. Fletcher and defendant stated, "This is a stick-up." Defendant carried a gun. Defendant and Tina Silas went upstairs to Patton's apartment while Fletcher held Patton downstairs. Fletcher hit Patton in the eye with his fist, knocking her down. Fletcher held her down while taking $8 from a change purse in her brassiere. Fletcher then dragged Patton to her apartment and threw her to the floor. He covered her with blankets and sheets from the bed and stated that if she moved he would kill her. Fletcher "tore up" the room, took Patton's radio and cigarettes, and left. Patton then got up and saw Palmore. She and Palmore looked around the apartment. The apartment was "torn up" and everything was pulled out of the drawers. Patton called the police. Patton admitted on cross-examination that in April 1986, she told an assistant State's Attorney, and in May 1986, she told defense counsel, that she wanted to drop the charges against defendant.

John Palmore testified that on November 16, 1985, he lived at the Lake Street apartment with Patton. They were installing a floor in the apartment when there was a knock at the door. Patton went downstairs to answer it and then returned with Tina Silas. Palmore gave Tina Silas a quarter and she left the apartment to make a telephone call. After 10 minutes Patton went downstairs to answer another knock at the door. The next person Palmore saw was defendant, who entered the apartment with a small, dark gun that looked like a .22 caliber. Defendant took the hammer that Palmore was using in installing the floor. Defendant pushed Palmore over, grabbed his wallet and took $70 from it and then threw the wallet on the floor. Tina Silas then picked up the wallet, looked through it and then threw it on the floor. Palmore remained on the floor for a few minutes, then got up and saw that defendant and Tina Silas were gone. Palmore found Patton on the bedroom floor covered with blankets. The apartment was "torn up" and books, clothes, and other things were on the floor.

Allen Jaglowski was called as a witness for the State. Defense counsel objected to any testimony that might be given by Jaglowski that would tend to incriminate defendant. Counsel acknowledged that he did not move to sever at the start of trial, but stated to the trial judge, "[S]ince you are the trier of fact I am sure you can distinguish any irrelevant evidence as opposed to relevant matters." The court responded, "I will only consider whatever evidence is offered against each defendant individually." The court then overruled the objection and Jaglowski gave the following testimony.

Jaglowski was a detective for the Chicago police department. He and his partner, Detective Johnson, talked to James Fletcher on November 24, 1985, around 1 a.m. After being advised of his *Miranda* rights, Fletcher gave a statement. Jaglowski testified that Fletcher told him about Randall storing the beds in Patton's apartment and that Fletcher believed Patton gave the beds to defendant, who sold them for "dope." Fletcher also told police about the incident that occurred on November 16, 1985. Fletcher was with two friends, Johnnie and Nut, when he ran into defendant. Fletcher stated that defendant talked about robbing the man who lived with Patton because defendant knew that the man had recently obtained some money. Fletcher told defendant and the others that the idea was good, but the plan should be better. Fletcher, defendant, and the others planned that Tina Silas would knock on the door and claim that she left something in Patton's apartment. Fletcher stated that they went to the apartment and Tina Silas knocked on Patton's door. When defendant threw a jacket over Patton's head, Fletcher, Johnnie, and Nut left.

Jaglowski told Fletcher that he did not believe him. Fletcher then told him that he had entered the apartment. Further, Fletcher and Tina Silas went upstairs and saw Palmore on the floor. Fletcher took the hammer from Palmore and threatened Palmore when he asked why Patton was moaning in the hallway. While Tina Silas looked around the apartment for something to steal, Fletcher checked the television. Since the television was broken, Fletcher took the radio and ran out the back door. Fletcher told police that neither he nor defendant had a gun.

At the close of the State's case, defendant moved for a directed finding of not guilty. After hearing argument, the trial court denied the motion. The parties then stipulated that if Michael Black, an investigator for the Cook County public defender's office, were called to testify, he would state that on April 17, 1986, Patton told him that the State's Attorney told her and Palmore not to talk to anyone from the public defender's office about the case. In addition, the parties stipulated that if called to testify, police officer Casper would state that he was one of the first officers to arrive on the scene and that in his police report, he noted that Patton was not injured. Further, the parties stipulated that if Detective Paulnitsky were called to testify, he would state that after speaking to Palmore and Patton, he wrote in his police report that the weapon used was an unknown black steel handgun. Defendant then rested. At the close of trial and sentencing, defendant filed a motion for a new trial, which the court denied.

Initially, on appeal, defendant asserts that he was denied the ef-

fective assistance of counsel since his attorney failed to request severance of his trial from the trial of Fletcher and failed to move to have defendant's name redacted from the statement given by Fletcher. Defendant asserts that codefendant Fletcher did not take the stand and thus was not subject to cross-examination.

The general rule is that defendants who are jointly indicted are to be jointly tried unless fairness to one of the defendants requires a separate trial to avoid prejudice. (*People v. Bean* (1985), 109 Ill. 2d 80, 92, 485 N.E.2d 349; *People v. Smith* (1988), 172 N.E.2d 94, 526 N.E.2d 849.) Separate trials may be appropriate, however, when one defendant, who does not testify at trial, has made statements to police, which are admitted at trial, and which inculpate the codefendant in the commission of the offense charged. *People v. Nunn* (1989), 184 Ill. App. 3d 253, 267, citing *People v. Duncan* (1988), 124 Ill. 2d 400, 530 N.E.2d 423.

Defendant cites several recent United States Supreme Court cases which have addressed a defendant's right to confront witnesses in the context of a joint trial. In *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714, the Court held that admission of a nontestifying codefendant's confession, which inculpates the defendant, violates the defendant's sixth and fourteenth amendment right to confront witnesses, even if the jury is instructed not to consider it against the defendant and even if the defendant's own confession is admitted. (*Cruz*, 481 U.S. at 193, 95 L. Ed. 2d at 172, 107 S. Ct. at 1719.) In *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620, the Court dealt with the effect of limiting instructions to the jury. The Court held that the general rule that a jury will faithfully follow instructions does not apply where the confession of an accomplice which incriminates the defendant is admitted at the defendant's trial, since the confession is "inevitably suspect" and "devastating" to the defendant. *Bruton*, 391 U.S. at 136, 20 L. Ed. 2d at 485, 88 S. Ct. at 1628.

Both *Cruz* and *Bruton* involved jury trials, and so dealt with possible violations of the right to confront witnesses under circumstances present when a jury is the trier of fact. The instant case, by contrast, was a bench trial. The court in *People v. Vinson* (1977), 49 Ill. App. 3d 602, 364 N.E.2d 364, discussed the effect of the *Bruton* holding in a bench trial where severance has been denied but where the court has indicated that it will consider evidence offered against each defendant individually. *Vinson* states that *Bruton* fails to discount a judge's statement in a bench trial that he will not consider a codefendant's confession against the other defendant, particularly

where the record indicates that the judge did not consider the codefendant's confession against the defendant. (*Vinson*, 49 Ill. App. 3d at 608.) Similarly, in the instant case we do not believe that *Bruton* mandates severance, since the court stated it would not consider Fletcher's statement against defendant, and since the record fails to indicate that the court did consider the statement against defendant.

Plaintiff also cites *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056, in which the Court held that a codefendant's statement which inculpated the defendant was presumptively unreliable and did not have sufficient independent "indicia of reliability" to overcome the presumption. As stated in *People v. Nunn* (1989), 184 Ill. App. 3d 253, however, failure to sever where a violation of the right to confront witnesses has been found is ground for reversal unless the trial court's failure to sever was harmless beyond a reasonable doubt. *Nunn*, 184 Ill. App. 3d at 267, citing *People v. Smith* (1988), 172 Ill. App. 3d 94, 106, 526 N.E.2d 849, citing *Harrington v. California* (1969), 395 U.S. 250, 23 L. Ed. 2d 284, 89 S. Ct. 1726. See *Cruz v. New York* (1987), 481 U.S. 186, 95 L. Ed. 2d 162, 107 S. Ct. 1714; *Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056; *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.

Since we find that any alleged error in the failure to sever defendant's trial was harmless beyond a reasonable doubt, we need not address in further detail defendant's assertions regarding violation of the right to confront witnesses. The evidence against defendant came principally through the testimony of State's witnesses Willie Mae Patton and John Palmore. Both Patton and Palmore testified in detail regarding the events that occurred on November 16, 1985. In addition, both testified regarding the relationships among those involved in the subject incident, and regarding the selling of the furniture shortly before the subject incident occurred.

Both Patton and Palmore testified to substantially the same events. Both stated that on November 16, 1985, Tina Silas came to their apartment twice, the first time asking for a quarter for a telephone call. Approximately 10 minutes later, there was another knock at the door. Patton looked out the window and stated she saw Tina Silas alone. Patton then went downstairs to let Tina in. Patton testified that when she opened the door, defendant and Fletcher were there in addition to Tina Silas. Fletcher remained downstairs with Patton while Tina Silas and defendant went upstairs to the apartment. Palmore stated that defendant entered the apartment, knocked him down, and took money from him. Tina Silas also was present.

Patton stated that Fletcher took her into the bedroom and covered her with sheets and blankets. After the offenders left, Palmore found Patton in the bedroom covered with blankets. Both witnesses stated that defendant carried a gun. Both testified that the apartment was "torn up" and that objects were strewn on the floor. The detailed testimony of each witness thus was corroborated by the testimony of the other.

In addition, the evidence entered by stipulation did not seriously impeach the testimony of Patton and Palmore. A stipulation was entered that Officer Casper wrote in his police report that Patton was not injured. Patton stated on cross-examination that she did not tell the police that her eye was injured. Further, the record does not indicate whether any injury to Patton was noticeable.

Additionally, defendant failed to call any witnesses. The only other evidence at trial came through the testimony of Detective Jaglowski, who testified regarding the statement of Fletcher. Even absent the testimony of Jaglowski, however, we find that the evidence was sufficient to support defendant's conviction. Further, in view of the trial judge's statement that he would consider only evidence offered against each defendant individually against that defendant, we find that any error in admitting the testimony of Jaglowski regarding Fletcher's statement was harmless beyond a reasonable doubt. Of some importance is the presumption that a trial judge acting as a trier of fact considered only competent evidence in determining a defendant's guilt. *People v. Gholston* (1984), 124 Ill. App. 3d 873, 464 N.E.2d 1179.

Further, as noted by the State, defendant has failed to show that his defense and that of codefendant Fletcher were "antagonistic" (see *People v. Causey* (1984), 127 Ill. App. 3d 1080, 470 N.E.2d 18), since neither defendant presented a theory of defense at trial. For the same reasons that we find admission of Fletcher's statement through the testimony of Officer Jaglowski was harmless beyond a reasonable doubt, we find that counsel's failure to move to redact the name of defendant from the statement of Fletcher also was harmless error beyond a reasonable doubt.

Defendant next contends that the failure of defense counsel to move to sever or redact constituted ineffective assistance of counsel. To show a violation of the sixth and fourteenth amendment right to effective assistance of counsel, a defendant must show that: (1) his attorney's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result"; and (2) there is a reasonable probability that, but for

counsel's errors, the result of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2064.) The Illinois Supreme Court, in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246, adopted the standards stated in *Strickland.*

■ We find that in the instant case, the record fails to show that but for counsel's failure to move to sever or redact defendant's name from the statement of Fletcher, the result of defendant's trial would have been different. We reject defendant's assertion that counsel's failure to object to the testimony of Detective Jaglowski, on the ground that Jaglowski was not listed as a State's witness, constituted ineffective assistance of counsel. The State's response to the discovery request, in addition to listing the names of specific police officers, stated that any other persons named in police or other reports may be called to testify. In any event, defendant fails to show that the defense was surprised or otherwise prejudiced when Jaglowski was called to testify. (See *People v. Rice* (1982), 108 Ill. App. 3d 344, 438 N.E.2d 1333.) We have found that admission of Fletcher's statement through Officer Jaglowski was harmless error beyond a reasonable doubt. We also hold that the failure of defense counsel to move to sever or redact does not constitute ineffective assistance of counsel.

■ Defendant next contends that the trial court's failure to grant a severance, *sua sponte*, constituted plain error. We disagree. In the instant case, defendant failed to move to sever. As a rule, failure to move to sever prior to trial precludes any claim on appeal of prejudice resulting from a joint trial. (*People v. Rogers* (1979), 79 Ill. App. 3d 745, 748, 398 N.E.2d 1058; *People v. Williamson* (1968), 101 Ill. App. 2d 199, 242 N.E.2d 313, *rev'd on other grounds* (1969), 43 Ill. 2d 351, 253 N.E.2d 437.) Further, since we have found that admission of Fletcher's statement through the testimony of Jaglowski was harmless error beyond a reasonable doubt, we reject defendant's argument that it was plain error for the trial court to fail to grant a severance, *sua sponte*.

Defendant next contends that the trial court erroneously limited the cross-examination of Patton regarding her employment. In addition, questioning was limited concerning alleged prior beatings of Patton by Palmore and a prior battery charge against Palmore. Defendant asserts that the questions were designed to expose Palmore's dominance over Patton and the bias, interest, and motive to testify falsely of Patton and Palmore. The evidence, defendant asserts, supports the defense theory that Patton and Palmore "concocted" a complaint against defendant as an extension of Palmore's

"grudge" against defendant. The ill feeling allegedly stemmed from defendant's having had a relationship with Patton; Palmore's wounded pride when he was pushed out of the apartment; and Palmore's desire for retaliation for the incident in which defendant "jumped on" Palmore to intervene after Palmore "jumped on" Patton. In addition, Patton's statement that she wanted to drop the charges supports the defense theory that the testimony of Patton and Palmore was procured by the threat that the prior battery charge against Palmore would be prosecuted or reinstated. Defendant asserts that his sixth and fourteenth amendment right to confront witnesses was violated.

■■ ■ We note that defendant has waived the issue by failing to raise it in his post-trial motion. (*People v. Myles* (1985), 131 Ill. App. 3d 1034, 476 N.E.2d 1333.) Even assuming, *arguendo*, that the issue was properly preserved, we find no harmful error or abuse of discretion. As stated in *People v. Triplett* (1985), 108 Ill. 2d 463, 485 N.E.2d 9, cross-examination to show bias, interest, or motive to testify falsely is a matter of right. (*Triplett*, 108 Ill. 2d at 475; see also *Alford v. United States* (1931), 282 U.S. 687, 691-92, 75 L. Ed. 624, 627, 51 S. Ct. 218, 219.) The trial court may not deny the defendant this right. However, the court has discretion to preclude repetitive or unduly harassing questioning regarding these matters. (*Triplett*, 108 Ill. 2d at 475.) In addition, where a witness is impeached by showing bias, interest, or motive, "the evidence must potentially give rise to the inference that the witness has something to gain or lose by his testimony." (*People v. Phillips* (1981), 95 Ill. App. 3d 1013, 1020, 420 N.E.2d 837.) Therefore, the evidence used must not be remote or uncertain. *Triplett*, 108 Ill. 2d at 475-76.

Regarding her income and employment, Patton testified on cross-examination that at the time of trial, she was living with Palmore and Palmore paid all the bills and helped to support Patton. Counsel then asked Patton what she did for a living. The prosecutor objected, and the trial court asked what was the relevance of the question. Defense counsel stated that he was asking for "general background." When asked again, counsel stated that he was asking regarding the "situation" with defendant, "where the money was coming from at that time," and regarding the financial relations among Patton, Palmore, and defendant. The court directed defense counsel to ask about Patton's source of income and what the situation was when she was living with defendant. In response to counsel's question regarding her source of income when she was living with defendant, Patton stated that it was general assistance.

■■ Defendant asserts that defense counsel was unduly limited in questioning Patton regarding her source of income and employment at the time of trial. We find no abuse of discretion regarding this line of questioning. The court allowed counsel to question Patton regarding who paid the bills and provided the financial support for Patton and Palmore when they were living together. Thus, counsel was able to show that Palmore took care of the couple's living expenses. Patton also testified that she was receiving general assistance and that she paid the rent when she was living with defendant. Counsel thus was allowed to indicate the financial relations between Patton and defendant. The trial court properly allowed counsel to question Patton regarding the areas that counsel had indicated were relevant, without unduly restricting cross-examination.

Defendant also asserts that counsel was not allowed to inquire into Palmore's alleged beating of Patton or regarding a previous battery charge brought against Palmore. Defense counsel referenced the battery charge during an offer of proof at trial. Counsel did not set forth in any detail, however, the basis for the charge, nor does the record otherwise contain details regarding the charge. Defense counsel asserted that such questioning would have shown Palmore's dominance over Patton and control over her testimony. The trial court stated that the fact of any alleged beating did not necessarily support defendant's assertion that Palmore controlled Patton's testimony.

■■ We find no abuse of discretion. The trial court properly excluded the evidence regarding the battery charge. Such evidence would have been too remote to relate to the assertion that Patton's testimony may have been influenced by Palmore. (See *Triplett*, 108 Ill. 2d at 475-76.) The State notes that a defendant may be allowed to show that a witness has been charged with a crime where the evidence would reasonably show that the witness' testimony might be influenced by bias, interest, or a motive to lie. (*People v. Mason* (1963), 28 Ill. 2d 396, 401, 192 N.E.2d 835.) However, defendant has shown no basis to extend that principle to allow evidence of a charge brought against a witness other than the one who is on the stand. We also find evidence regarding any alleged beating of Patton by Palmore to be too remote to the issues in the instant case to justify extensive questioning on cross-examination. We note that Palmore testified at trial that he did not discuss the subject incident with Patton since it occurred. We find no abuse of discretion.

Defendant next asserts that he was not proved guilty beyond a reasonable doubt where the State's witnesses provided inconsistent and inherently incredible testimony. Defendant asserts that there

were inconsistencies in the testimony of Patton and Palmore, including the following: (1) they testified variously regarding when defendant and Palmore lived in her apartment; (2) Patton testified that she did not know Fletcher's common law wife and later stated that she did; (3) Patton stated on direct examination that both defendant and Fletcher stated, "This is a stick-up," while on cross-examination she stated that only defendant used those words; (4) Patton stated that Fletcher had a gun and then stated that he did not; (5) Patton stated that her eye was injured, while the police report of Officer Casper indicated that she was not injured; and (6) Patton told police that the gun was a "little black thing" and at trial stated that it was a blue-steel handgun.

There is a strong presumption that the finding of the trier of fact regarding the credibility of witnesses is sound. (*People v. McCarthy* (1981), 102 Ill. App. 3d 519, 430 N.E.2d 135.) A reviewing court may not reverse a conviction unless the evidence is so improbable or unreasonable as to raise a reasonable doubt of the defendant's guilt. (*People v. Vandiver* (1984), 127 Ill. App. 3d 63, 66-67, 468 N.E.2d 454.) Where the evidence is merely conflicting, the reviewing court will not substitute its judgment for that of the trier of fact. (*McCarthy*, 102 Ill. App. 3d at 522.) Where the record does not support the factual determinations, a reviewing court must reverse. (*McCarthy*, 102 Ill. App. 3d at 522.) The positive testimony of one credible witness, however, is sufficient for a conviction even though it is contradicted by the defendant. *Vandiver*, 127 Ill. App. 3d at 67.

We have reviewed in detail the testimony given by Patton and Palmore in addition to the other evidence admitted by way of stipulation by the parties. Our review of the record indicates that there is sufficient support for the convictions entered against defendant. Defendant fails to indicate which element or elements of the charges against defendant were not proven beyond a reasonable doubt. Rather, defendant merely states that the testimony of the witnesses was not credible. We find, however, that any inconsistencies in the testimony of Patton and Palmore are minor, and that their testimony is sufficiently clear and specific, and corroborative of the other's testimony, so that we may not disturb the finding of the trial court. *McCarthy*, 102 Ill. App. 3d at 522.

Finally, defendant contends that the multiple convictions entered against him violate protections against double jeopardy. Defendant asserts that the evidence fails to support convictions on both counts of burglary and on both counts of robbery. At most, defendant asserts, the evidence would support a conviction on only one count of each of-

fense. Further, defendant contends that sentencing was improper, as the court took into account convictions on all counts charged.

■■■ Defendant failed to object at trial to the entry of conviction on each count charged and additionally failed to raise the issue in his post-trial motion and, therefore, has waived the issue on appeal. (*People v. Myles* (1985), 131 Ill. App. 3d 1034, 476 N.E.2d 1333.) However, for purposes of this appeal, we will address this issue. The indictment charges defendant with armed robbery in one count based on the taking of money and a radio from the person and presence of Willie Patton, and in a second count based on the taking of money from the person and presence of John Palmore. Defendant was convicted of the lesser included offense of robbery on both counts. We find that the record supports conviction of robbery on both counts. Therefore, we will not disturb the robbery convictions.

■■■ In addition, the indictment charges defendant with residential burglary in one count based on entry into the dwelling of Willie Patton and in a second count based on entry into the dwelling of John Palmore. We agree with defendant that there was only one entry made into one dwelling which could support the burglary conviction. Accordingly, entry of convictions on both counts charging residential burglary was improper. Therefore, the conviction on only one count of residential burglary may stand. (See *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838, *cert. denied* (1977), 434 U.S. 894, 54 L. Ed. 2d 181, 98 S. Ct. 273.) We do not find, however, that remandment for resentencing is necessary, since the record fails to indicate that the trial court was influenced in sentencing by improper factors, or that the court determined the sentence based on the entry of conviction on two counts rather than a single count of the offense. (See *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48.) While we are vacating the conviction on the second count of residential burglary, we affirm the remainder of the judgment of the circuit court.

For the foregoing reasons, we affirm in part and vacate in part the judgment of the circuit court.

Judgment affirmed in part and vacated in part.

RIZZI and WHITE, JJ., concur.